IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AFNAN MOHD AYMAN ABU SARAR,

    Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
STATE, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-5916-TWT

## OPINION AND ORDER

This is a writ of mandamus action. It is before the Court on Defendants

Marco Rubio; Peter T. Shea; U.S. Embassy in Amman, Jordan; and U.S.

Department of State's Motion to Dismiss [Doc. 10]. For the reasons set forth

below, the Court GRANTS the Defendants' Motion to Dismiss [Doc. 10].

## I.   Background[1]

Plaintiff Afnan Mohd Ayman Abu Sarar requests a writ of mandamus

directing the Defendants to, among other things, issue a final adjudication of

her parents' immigrant visa applications. (Compl. at 1, 7–8 [Doc. 1].) Sarar is

a U.S. citizen, while her parents are citizens of Jordan. (*Id.* ¶¶ 1–2.) Sarar filed

"immediate relative" visa petitions for her parents with U.S. Citizenship and

---

[1] The Court considers matters outside the pleadings for Rule 12(b)(1) purposes, *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) 1261 (regarding factual attacks), but accepts the facts as alleged in the Complaint as true for Rule 12(b)(6) purposes, *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

Immigration Services (USCIS) in July 2022. (*Id.* ¶ 4.) USCIS approved the petitions, enabling each of Sarar's parents to formally apply for a visa and interview with a consular officer.[2] (*Id.* ¶¶ 6–7.) A consular officer interviewed both parents in February 2024. (*Id.* ¶ 8.) According to a declaration submitted by the State Department, the consular officer refused to issue visas the same day, finding both parents ineligible for an immigrant visa under 8 U.S.C. § 1201(g). (Peterson Decl. ¶¶ 8, 14 [Doc. 10-1].) Sarar claims that her parents' visa applications are still awaiting final adjudication because the consular officer requested additional documents following the initial refusal—which her parents submitted—and stated that the applications have been placed into "administrative processing." (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 10–13.) In her suit, Sarar contends that the Defendants' delay in issuing a final decision violates the Administrative Procedure Act ("APA") (Count I) and the Fifth Amendment's Due Process Clause (Count II). The Defendants move to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial

---

[2] An immigrant visa applicant "[m]ake[s] or file[s] an application for a visa" when he or she interviews with a consular officer. *See* 8 U.S.C. § 1202(a); 22 C.F.R. § 40.1(*l*)(2); *id.* § 42.62.

attacks" and "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1261 (quotation marks, citation, and brackets omitted). On a facial attack, therefore, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia*, 104 F.3d at 1261 (quotation marks omitted). On a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 960–61 (11th Cir. 1999) (quotation marks and citation omitted).

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts and even if the

possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.    Discussion

#### A. Unreasonable Delay (Count I)

The Administrative Procedure Act and the Mandamus Act provide federal courts with jurisdiction to hear certain types of cases. The APA requires federal agencies to "conclude" matters presented to them "within a reasonable time," 5 U.S.C. § 555(b), and grants federal courts jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(a). But an APA claim is actionable "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah*

4

*Wilderness Alliance*, 542 U.S. 55, 64 (2004). And a plaintiff asserting an APA claim may only challenge an agency's "final" decision, not merely any decision on a matter. *See id.* at 61–62. Similarly, the Mandamus Act grants federal courts jurisdiction to "compel . . . any agency [ ] to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But mandamus relief is an "extraordinary remedy" and is available to a plaintiff "only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Cash v. Barnhart*, 327 F.3d 1252, 1257–58 (11th Cir. 2003) (citations omitted). For purposes of Sarar's Complaint, the Court's jurisdiction under the APA and the Mandamus Act is coextensive. *See Moreno v. Wolf*, 558 F. Supp. 3d 1357, 1363 (N.D. Ga. 2021) ("Where, as here, a plaintiff invokes 'the Court's mandamus jurisdiction to compel action but not to direct the exercise of judgment or discretion, mandamus jurisdiction is coextensive with the remedies available under the APA.").

According to Sarar, the State Department has failed to render a final decision on her parents' immigrant visa applications within a reasonable time, which she alleges the State Department has a nondiscretionary duty to do. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 10–11.) While Sarar acknowledges that the State Department has stated it "refused" to issue visas to her parents in February 2024, she argues that this refusal decision is not final. (*See id.* at 10–12.) As support, she explains that the State Department

5

stated that the visa applications have been placed into "administrative processing" after requesting and receiving additional visa-related documentation from her parents. (*Id.* at 11–12.) The Defendants meanwhile maintain that the visa applications remain officially "refused" notwithstanding the fact that the State Department "afford[s] noncitizens refused under Section 1201(g) additional administrative process . . . that may cause the officer to reconsider the refusal." (Br. in Supp. of Defs.' Mot. to Dismiss, at 4–5; Peterson Decl. ¶ 16.)

Ultimately, the Court holds it does not have subject-matter jurisdiction to compel the Defendants under the APA or the Mandamus Act to take further action. Although the Court is sympathetic to the hardships the Sarar family has endured, the State Department has already taken all required action. Federal regulations require consular officers who have received completed visa applications to either (1) "issue the visa," (2) "refuse the visa under [8 U.S.C. § 1182(a)] or [8 U.S.C. § 1201(g)] or other applicable law," or (3) discontinue granting the visa." 22 C.F.R. § 42.81(a); *see also* 8 U.S.C. § 1182(a) (declaring visa applicants ineligible to receive visas under certain conditions); *id.* § 1201(g) (prohibiting consular officers from issuing visas under certain conditions). Pursuant to 22 C.F.R. § 42.81(a), the assigned consular officer refused to issue visas after finding Sarar's parents ineligible for visas under 8 U.S.C. § 1201(g). (Peterson Decl. ¶¶ 8, 14 [Doc. 10-1].) Sarar does not point to—

6

and this Court is unable to locate—any laws or regulations that would impose additional adjudication duties on the State Department and enable the Court to compel further action. *See Sarshartehran v. Rubio*, 2025 WL 1261787, at *9 (W.D. Va. May 1, 2025) ("[D]efendants have already satisfied their mandatory duties under the INA and implementing regulations by issuing § 221(g) [8 U.S.C. § 1201(g)] refusals, and there is no further discrete, required agency action that the court could compel defendants to take.").

While the State Department offers an additional mechanism through which an applicant may overcome an official refusal, that process is not required by statute or regulation nor is it guaranteed to change a refusal. *Karimova v. Abate*, 2024 WL 3517852, at *2 (D.C. Cir. 2024); *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 102 (D.D.C. 2024) (finding that consular officers' 8 U.S.C. § 1201(g) refusals are "final," and citing a provision in the State Department's operations manual that states "[a] refusal under [Immigration and Nationality Act] 221(g) [8 U.S.C. § 1201(g)] is, legally, a refusal on a visa application, even if that refusal is eventually overcome"). As the D.C. Circuit recently explained, a visa officially refused under 22 C.F.R. § 42.81(a) will remain so, and "keeping the door open in administrative processing can only benefit, never hurt, the applicant's entry prospects." *Karimova*, 2024 WL 3517852, at *2; *see also Conley v. U.S. Dep't of State*, 731 F. Supp. 3d 104, 111 (D. Mass. 2024) ("While [the § 1201(g)] denial might be subject to

reconsideration in the future, that alone does not support a viable claim for unreasonably delay; indeed, almost any agency action could be reconsidered or revised.")

To be sure, the Eleventh Circuit has not addressed this issue, and courts across the country have arrived at different conclusions. But many courts that have considered this question, including most recently the D.C. Circuit and two federal courts in Georgia, have held that a consular officer's decision to issue or refuse a visa under 22 C.F.R. § 42.81(a) constitutes a "final" decision for APA and Mandamus Act purposes. *See Karimova*, 2024 WL 3517852, at *3–6; *Firozabadi v. Rubio,* Case No. 25-cv-993 (N.D. Ga. Feb. 20, 2026) ("Most courts that have considered this issue have found that substantially similar [refusal] notices constituted a final adjudication of visa applications."); *Yousefifar v. U.S. Dep't of State*, 2025 WL 1805315, at *7–8 (S.D. Ga. June 30, 2025); *see also, e.g.*, *Ramizini v. Blinken*, 745 F. Supp. 3d 244, 261–62 (E.D.N.C. 2024) ("Defendants discharged their nondiscretionary duty to adjudicate [the plaintiff's] visa application when the consular officer refused it after the interview. The more recent weight of authority supports this conclusion."); *Martinez v. Baumann*, 796 F. Sup. 3d 337, 348 (W.D. Tex. 2025) ("[T]his Court and many others have determined that a consular officer's visa refusal constitutes a final adjudication, even if further administrative processing is contemplated." (citation omitted)); *Conley*, 731 F. Supp. 3d at 111.

*But see Anid Infosoft LLC v. Blinken*, 2023 WL 7312488, at \*4–5 (N.D. Ga. Nov. 3, 2023) (reaching the opposite conclusion based on a small subset of cases, two D.C. district court cases that preceded the D.C. Circuit Court's *Karimova* decision and one New Jersey district court case). These cases persuade the Court on this issue, though the Court acknowledges other courts (particularly in the Ninth Circuit) have held differently. *See, e.g., Shahijani v. Laitinen*, 2023 WL 6889774, at \*3 (C.D. Cal. Oct. 6, 2023) ("Courts in this district have repeatedly held that a refusal for 'administrative processing' is not a final decision."); *Sharifi v. Blinken*, 731 F. Supp. 3d 433, 437–38 (E.D.N.Y. 2024); *Hassan v. Dillard*, 758 F. Supp. 3d 973, 978–82 (D. Minn. 2024). Because Sarar has not identified a final nondiscretionary action that the State Department has not taken, the Court grants the Defendants' Motion to Dismiss Count I.

## B. Due Process Clause (Count II)

Sarar claims the State Department's failure to adjudicate her parents' visa applications violates her due process rights. She argues that "the delay in adjudication of [her parents'] visa applications is egregious and unreasonable," as their applications have "been pending since May 2023 without a final decision." (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 20.) To support her due process claim, she explains that she "has a vested interest in the adjudication of her parents' visa applications" and that the delay in

adjudication has "irrevocably harmed her by causing a financial and emotional toll." (*Id.* at 17.)

Sarar's due process claim fails for at least two reasons. First, the Court has already determined that the State Department reached a final decision on the merits in February 2024, so Sarar cannot pursue a claim premised on the State Department's failure to reach a final decision. Second, even if the Court were to assume Sarar sought review of that decision on due process grounds, the Supreme Court's recent decision in *Department of State v. Muñoz*, 602 U.S. 899, 909 (2024), forecloses that possibility. In *Muñoz*, a citizen brought a due process claim against the State Department for its decision to refuse an immigrant visa to her spouse without providing a "sufficient reason."[3] *Id.* at 904–05. The Supreme Court held that a citizen does not have a constitutionally protected liberty interest in her noncitizen spouse's admission to the United States. *Id.* at 909. It cautioned that the plaintiff's claim "to a procedural due process right in *someone else's* legal proceeding would have unsettling collateral consequences." *Id.* at 916; *see also id.* at 917 ("[T]he Constitution does not ordinarily prevent the government from taking actions that 'indirectly or incidentally' burden a citizen's legal rights." (citation omitted)). Similarly,

_____

[3] Although the consular non-reviewability doctrine generally prohibits judicial review of a consular officer's decisions to issue or refuse a visa, the Supreme Court assumed the existence of a narrow exception to the doctrine— "when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Muñoz*, 602 U.S. at 908.

here, Sarar's due process rights are not implicated by the State Department's refusal to issue immigrant visas to her parents. Therefore, the Court grants the Defendants' Motion to Dismiss Sarar's due process claim (Count II).

## IV.   Conclusion

For the reasons set forth above, the Court GRANTS the Defendants' Motion to Dismiss [Doc. 10]. The Clerk is directed to enter judgment and close the case.

SO ORDERED, this ___3rd___ day of August, 2026.

THOMAS W. THRASH, JR.
United States District Judge

11